PEARCE, Judge
(dissenting):
'I 20 I dissent.
§21 I agree with the majority that the time may have arrived for the Utah Supreme Court to revisit its holding in State v. Ramirez, 817 P.2d 774 (Utah 1991). But so long as Ramirez: remains good law, we are duty-bound to apply it. I cannot squint at Ramirez's holding in a way that permits me to see how the identification testimony offered in this case is less reliable than the testimony the Ramirez court deemed admissible. Ramirez identified five factors a court must consider in assessing the reliability of cyewitness testimony. In almost all respects, the showup involving Defendant in this case was substantially less troublesome than that the Ramirez court approved. _.
122 The first Ramirez factor centers on the "opportunity of the witness to view the actor during the event." Id. at 782. This includes consideration of how long the witness saw the actor, the distance between them, the lighting, whether the witness could view the actor's face, and whether there were distracting cireumstances that would affect the witness's ability to see the actor. Id.
123 In Ramirez, the witness (Wilson) testified at various times that he had seen the actor for either a second, a few seconds, or a minute or longer. Wilson also testified that the actor was about ten feet away from him; other witnesses described the distance as being as much as thirty feet away. Wilson testified that the actor was crouched at the end of a building and was wearing a mask over the lower part of his face. Wilson conceded that he could not see the actor's eyes clearly, but he "could see enough to know" they were "small." Id. Testimony varied as *26 to whether the lighting was good or whether shadows shrouded the actor. Id. 'at 782-83.
24 Here, the trial court found that the witness viewed Defendant for several see-onds when they were face to face in the car's open doorway. They were less than a foot apart, and the area was lit by two. street lamps, a porch light, a neighbor's floodlight, and the car's headlights, as well as the car's overhead dome light and lighted dashboard. Defendant's face was uncovered. In all relevant ways, with the possible exception of the duration of the observation, the witness's opportunity to view Defendant was superior to the observation Ramirez considered.
125 The second Ramirez factor examines the witness's degree of attention to the actor. Id. at 788. In Ramirez, Wilson was accosted by two men: Ramirez; who wielded a firearm, and a second man carrying a pipe. Wilson was struck with the pipe before he was even aware of Ramirez. While Wilson became aware of Ramirez's presence, the "pipe man" continued to threaten and swing the pipe at Wilson. In contrast, here, the witness was alone with Defendant. After observing Defendant for several seconds, the witness thought that the way Defendant moved his hand was suggestive of having a weapon. . The witness began to get out of the car and negotiate his way around Defendant to escape the situation. Although concern over the potential possession of a weapon by Defendant may have distracted the witness, it remains a far ery from the distractions Wilson faced. -
26 The third Ramirez factor looks at the witness's capacity to observe the event, including "whether the witness's capacity to observe was impaired by stress or fright at the time of the observation, by. personal motivations, biases, or prejudices, by uncorrected visual defects, or by fatigue, injury, drugs or alcohol." State v. Ramirez, 817 P.2d 774, 783 (Utah 1991). The Ramires court considered that Wilson had been struck by a pipe and was facing a gun pointed at him by a masked man while the assailant continued to swing the pipe and threaten him. The supreme court concluded that "it was reasonable to assume that Wilson experienced a heightened degree of stress." Id. Although the witness here was undoubtedly startled by the presence of a stranger in his car at 8:30 a.m., there was no evidence before the trial court that this impaired the witness's capacity to observe Defendant. Nor was there any evidence that injury, drugs, or alcohol may have impaired the witness. |
127 The fourth Ramirez factor considers whether the witness's identification was made spontaneously and remained consistent. Id. It also examines whether the identification was the "product of suggestion." Id. Ranures instructs that trial courts should consider a variety of factors, including the amount of time between observation and identification, the witness's mental capacity and state of mind at the time of the identification, the witness's exposure to information from other sources, instances when the witness failed to identify the defendant, instane-es when the witness gave inconsistencies in the description of the defendant, and the cireumstances under which the defendant was presented to the witness for identification. See id.
1 28 In Ramirez, the showup occurred less than an hour after the event and the court concluded that nothing in the record suggested that Wilson's mental capacity or state of mind influenced the identification. Wilson was aware that one of the other witnesses had not identified Ramirez as the gunman but was otherwise not exposed to other identifications or opinions. The supreme court noted that Wilson's descriptions had varied in some details, such as whether Ramirez had worn a hat or sported tattoos. Id. at 784.
29 In this matter, the showup took place thirty-five minutes. after the robbery. There is no indication in the record that the witness had been influenced by additional information. However, as the majority ably describes, there exist a number of concerns with the consistency of the witness's descriptions of Defendant. Notably, at a subsequent lineup, the witness identified both Defendant and another man as persons who might have stolen his car. Moreover, the witness originally omitted any mention of Defendant's facial hair and said that the robber had long, straight hair. Defendant had a *27 goatee and was bald. The discrepancies in the witness's identification present the only way in which this matter could be considered a better candidate for reversal than Ramirez. However, in light of the myriad other ways in which the testimony in Ramireg appears more unreliable than that at issue here, I cannot conclude that these discrepancies are enough to pull this case from Ramires's reach.
. 180 Ramirez also examined whether Wilson's identification of Ramires was the product of suggestion by looking at -the procedures the showup employed. The identification occurred at night. Id. Prior to the showup, police officers remarked to Wilson that they had apprehended. someone who fit the description of one of the robbers. Ramirez, the only person involved in the show-up who was not a police officer, was handcuffed to a chain-link fence illuminated by the headlamps of police cars. Wilson identified Ramirez from the back seat of a police vehicle. Here, Defendant was similarly cuffed and lit by headlights. Defendant was also the only person at the showup who was not a law enforcement officer,
{31 I concur with the majority when it echoes the Ramirez court's conclusion that "Itlhe blatant suggestiveness of the showup is troublesome." 817 P.2d 774, 784 (Utah 1991). However, even after acknowledging the troublesome nature of the showup, as well as Wilson's inability to see Ramirez's face (in part because Ramirez was wearing a mask), Wilson's changing testimony about whether Ramirez wore a hat, and the distraction caused by another assailant wielding a pipe, the Ramirez court found that Wilson's identification testimony was sufficiently reliable to be admissible. Id. at 782-84. Although it is far from the most satisfying result, if the testimony Wilson offered in Ramirez cleared the bar, so too must the testimony the witness offered in this matter.
" 82 For these reasons, I dissent.